UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELISA SIMMS,<br>       Plaintiff,<br>v.<br>HEARST COMMUNICATIONS INC.,<br>       Defendant. | Case No. 16-cv-01384-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 25 |

      Simms's retaliation claims fail at the first step of the *McDonnell Douglas* analysis. *See Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007). Simms identifies a protected activity – reporting her harassment allegations to human resources in April 2015. *See* Opp. (Dkt. No. 27) at 8-9. And Simms identifies an adverse employment action – her firing the following October. *See id.* at 18. But she hasn't identified the causal link between the two. Simms points to temporal proximity. *Id.* at 17-19. But six months isn't the kind of closeness in time from which courts can infer a causal relationship. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). That's particularly true here given that Simms's internal complaint was fully resolved in April, just days after HR was alerted to it, when management "expedited" Vantosky's departure. MSJ (Dkt. No. 25) at 4-5; Sobo Decl. (Dkt. No. 26) Ex. B at 36:13-17; Opp. at 9.

      Simms argues that her termination was underway as early as July. Opp. at 18. But the causal link is still lacking. The evidence from that time shows only that the *Chronicle* conducted a department-wide review of its staffing. *See* Thyberg Decl. (Dkt. No. 30) Ex. E at 25. For the HR department to call attention to the special "Guild/Legal" concerns related to Simms's

employment status is unremarkable in that context.  Human resources is *expected* to call attention to any special obligations a company owes to its workers.  That it did so here is not evidence that Simms was targeted, much less that she was targeted for complaining about harassment; it is evidence that the *Chronicle* was engaged in the ordinary process one would expect of an organization weighing whether and how to downsize.

To the extent Simms argues that Hearst should have taken special preventive measures in response to the harassment allegations brought against Vantosky in New York, the failure-to-prevent claim is amenable to summary judgment in Hearst's favor.  *See* Cal. Gov't Code § 12940(k).  At the time Vantosky transferred to the *Chronicle*, the New York Division of Human Rights had already investigated the allegations against him and found "no probable cause" to suspect sexual harassment or discrimination.  Sobo Decl. (Dkt. No. 26) Ex. F.  Simms points to additional allegations circulating among the rank and file around the same time.  But Simms offers nothing to suggest that management at the defendant corporation – as opposed to management at the separately organized New York newspaper – had knowledge of these allegations and reason to believe they gave rise to a stronger claim than the one already rejected by the Division of Human Rights.  *See* Peterson Decl. (Dkt. No. 26) at ¶ 7; Opp. at 6.

To the extent Simms argues that Hearst is liable for failure to prevent harassment based on the inaction of Simms's departmental supervisors, there remains a dispute of fact.  Simms has submitted evidence that she reported her harassment to two different direct supervisors – Schneiderman and Barno – between February and April 2015.  Thyberg Decl. (Dkt. No. 31) Ex. H at ¶¶ 16-17; *id.*, Ex. G at ¶¶ 9-10.  Simms has also submitted evidence suggesting that Schneiderman failed to intervene in response to her allegations.  *Id.*, Ex. H at ¶ 16; *id.*, Ex. G at ¶ 9.  Although the evidence is sparse, Hearst does not dispute it, and indeed Hearst makes no mention of Schneiderman in its motion or reply.  *See* Reply (Dkt. No. 33) at 14.  Given the lack of clarity in Simms's failure-to-prevent argument, Hearst's silence is perhaps less reflective of a dispute of fact than of a dispute about the theories of liability properly disclosed in this litigation. But since the complaint adequately pleads Hearst's imputed knowledge of Simms's harassment,

and since the opposition to summary judgment adequately raises questions about the responsiveness of middle management, the Court cannot conclude that this theory of subdivision (k) liability has been foreclosed. Compl. (Dkt. No. 1-1) at ¶¶ 42, 43, 45; Opp. (Dkt. No. 27) at 8. And because the predicate existence of harassment is, for the reasons discussed below, a question for the jury to resolve, the Court cannot grant summary judgment on the failure-to-prevent claim. If Hearst believes Simms should be prevented from arguing failure to prevent for some other reason – as a Rule 37 sanction, for example – it should file an appropriate motion before or in conjunction with the motions in limine.

In light of the strict-liability standard for claims premised on a supervisor's misconduct, the only open question on Simms's subdivision (j)(1) claim is whether Vantosky's behavior rose to the level of actionable harassment.[1] *See* Cal. Gov't Code § 12940(j)(1); *State Dep't of Health Servs. v. Superior Court*, 31 Cal. 4th 1026, 1041 (2003). The Court cannot rule out that possibility as a matter of law. The record reflects a series of incidents consistent with a supervisor leveraging his position to coerce affection from a subordinate. Vantosky asked Simms to pay him more attention in the workplace. *See* MSJ (Dkt. No. 25) at 3-4; Opp. (Dkt. No. 27) at 6-7. He pressured her to speak with him more regularly. Sobo Decl. (Dkt. No. 6) Ex. A at 31-32, 49. He expressed romantic attachment. *Id.* at 56 And finally, when Simms discouraged him, he said couldn't keep himself away from her – suggesting not only that his behavior wouldn't change, but that he didn't intend it to. *Id.* at 54, 59. A reasonable jury could interpret these incidents as the kind of severe or pervasive pattern of conduct effecting a change in the conditions of Simms's employment. *See Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). That the incidents were relatively few does not necessarily make them "isolated" or "stray." *Cf. Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 36 (2003), *as modified on denial of reh'g* (Mar. 5, 2003). A jury could reasonably conclude that someone in

---

[1] Although Simms weaves it into her argument for failure to prevent, it's clear enough from the substance of both the complaint and the opposition to summary judgment that Simms has brought – and supplied evidence of – a separate subdivision (j)(1) claim. *See* Dkt. No. 35; Compl. (Dkt. No. 1-1) at ¶¶ 40, 44; Opp. (Dkt. No. 27) at 14-16.

Simms's position would absolutely dread the thought of going to work every day in light of Vantosky's conduct, and that his conduct constituted a significant interference with her ability to do her job.

A comparison with Hearst's cases is illustrative. In *Westendorf*, for example, the plaintiff was subjected to a coworker's lewd comments about women, but she wasn't herself the object of them, she spent relatively little time at the affected worksite, and she didn't claim that her work suffered as a result. *Westendorf v. West Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421-22 (9th Cir. 2013). In *Fisher*, the plaintiff witnessed egregious acts of verbal and physical harassment, but she never connected them to her own experience in the workplace, and the record didn't make clear that the incidents occurred particularly close in time to one another or to the plaintiff's allegations of harassment. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 612-14 (1989). Here, by contrast, Simms wasn't just a witness to offensive conduct, but – viewing the evidence in the light most favorable to Simms – the immediate target of it. Simms demurred, and the behavior continued. She demurred again, and the behavior escalated. Although it took her longer to reach out to HR, Simms complained about the alleged harassment just after it occurred, and on multiple occasions.

Hearst attempts to downplay the nature of Vantosky's conduct, but the fact that the offending words or deeds were less crass or aggressive here than in other, unsuccessful cases doesn't necessarily work to Hearst's advantage, as the analysis is holistic and fact-specific. *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009). Measured words and actions might well be *more* insidious than a pattern of vulgar but undirected slurs. *See, e.g.*, Sobo Decl. (Dkt. No. 26) Ex. A at 54:8-24. For the same reason, the Court can't accept Hearst's position that half the incidents Simms complained of can be set aside because they didn't expressly invoke either sex or gender. *See, e.g.*, *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704 (N.D. Cal. 2014). Even taken in isolation, Vantosky's actions are difficult to explain as anything other than "because of . . . [Simms's] sex." Cal. Gov't Code § 12940(j)(1). Once the actions are placed in their proper context, continuing to insist that Simms's sex was not at issue borders on absurd – whatever

4

conclusion one might reach on the severity or pervasiveness of the conduct.

Summary judgment is granted on the retaliation and constitutional claims and denied on the subdivision (j)(1) claim.[2] To the extent Simms is arguing for failure to prevent based on the inaction of her direct supervisor at the *Chronicle*, summary judgment is denied on the subdivision (k) claim. Accordingly, Simms will not be able to present an argument for punitive damages based on Vantosky's transfer to the *Chronicle*, but a punitive damages theory premised on Vantosky's actions as a "managing agent" – a theory Hearst has not yet addressed – remains. *See* Opp. (Dkt. No. 27) at 21; *Davis v. Kiewit Pac. Co.*, 220 Cal. App. 4th 358, 366 (2013).

The parties should consult this Court's Standing Order for Civil Trials in preparation for the pretrial conference. If the parties believe they will require relief from the standard deadline for motions in limine, they should file a motion or stipulation to that effect no later than April 17.

**IT IS SO ORDERED.**

Dated: April 14, 2017

VINCE CHHABRIA
United States District Judge

---

[2] Simms has not opposed summary judgment on the constitutional claim, and even if she had, Hearst would be entitled to summary judgment because an adequate alternative to a common-law constitutional tort already exists. *See Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 317 (2002).